638 So.2d 738 (1994)
Johnny MOWDY and Martin Scrivner,
v.
STATE of Mississippi.
No. 91-KP-1071.
Supreme Court of Mississippi.
February 3, 1994.
Johnny Mowdy, pro se.
Martin Scrivner, pro se.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SMITH, Justice, for the Court:
On August 9, 1989 Johnny Mowdy and Martin Scrivner each pleaded guilty in Warren County Circuit Court to six counts of aggravated assault stemming from a drive-by shooting on May 28, 1989, outside a Vicksburg nightclub. Based on the recommendation of the State, they both were sentenced to the custody of the Department of Corrections for twenty-five years for all charges. They were transported to Parchman Penitentiary promptly after sentencing. *739 Subsequently, both filed post-conviction relief petitions in the Circuit Court of Warren County contesting the voluntariness of their pleas.
Feeling aggrieved as a result of a summary judgment issued by the circuit judge, Mowdy and Scrivner appeal to this Court, assigning as error the circuit court's grant of summary judgment to the State. We hold that this case is one of those instances where conflicting affidavits do not warrant an evidentiary hearing. The circuit judge correctly entered summary judgment due to the absence of a genuine issue of material fact based on the entirety of the record before the lower court.

THE FACTS
On May 28, 1989, at approximately 2:10 a.m., several rifle shots were fired from a van into a crowd of people standing outside the Dodge City Lounge in Vicksburg, Mississippi. This "drive-by" shooting resulted in injuries to six people. The occupants of the van were the driver Martin Scrivner, and passengers in the front seat, Rose Marie Hogan and Johnny Mowdy. A Vicksburg police officer stopped the van shortly after the shootings and took all three individuals into custody.
Separate statements were given by each individual. All three statements were initially similar, but subsequently they parted company significantly on several major facts. Mowdy and Scrivner's statements indicated that shortly before the shooting incident, they were with co-defendant Rose Marie Hogan's husband, Danny Hogan, when he attempted to buy "a smoke" from a guy named "Slick" at the Dodge City Lounge. Danny was "ripped off," losing his money, and receiving no drugs in return. To make matters worse, he was beaten unconscious in the process by three subjects. Mowdy and Scrivner carried Danny home to his wife Rose. Mowdy, Scrivner and Rose then drove by the Dodge City Lounge. Mowdy and Scrivner both identified Rose as the "triggerman." Scrivner's statement to police mirrors Mowdy's except that he failed to mention the drugs and never explained why the three of them were at the Dodge City Lounge initially. Scrivner also stated that they had fired the gun used in the shooting earlier that day at Danny's house, and that Mowdy had talked about buying the gun from Danny. Scrivner claimed Rose wanted to go back to Dodge City Lounge to ask the guy why he took Danny's money. Mowdy further claimed that Rose wanted them to take her back by the Dodge City Lounge because, as she stated, "I am going to go and shoot the mother-fuckers, because don't nobody mess with my man or my money." Neither Mowdy nor Scrivner ever explained how Rose ended up with the gun that the three men had been shooting earlier that day. Also, Mowdy never claimed that he discussed buying the gun from Danny.
Rose Marie Hogan stated that Mowdy, Scrivner and her husband, Danny, had been out drinking that night, and when the three returned, Danny asked her to go to the store to get cigarettes for him. He was allegedly unable to get them for himself because he was too intoxicated. She claimed Mowdy and Scrivner went with her because they wanted to see the riverfront in Vicksburg. Rose stated that on the way to the store Scrivner deviated from her instructions and drove by the Dodge City Lounge. She claimed that Mowdy, who was seated next to the window on the front passenger's side, picked up a rifle and began shooting from the moving van as they passed the Dodge City Lounge. If Rose knew of the trio's prior attempt to purchase drugs, she never mentioned it to the police officers.
Scrivner and Mowdy appeared in the Warren County Circuit Court and changed their pleas from not guilty to guilty to the six-count aggravated assault indictment. During the course of questioning by the court, they both responded that they had not been induced to plead guilty by promises or threats from anyone, including their lawyer. The court ultimately accepted their pleas, finding them "intelligently and understandingly made." The State recommended that Mowdy and Scrivner be sentenced to a total of twenty-five years each for all charges. The court accepted that recommendation. They were promptly moved to Parchman to begin serving their sentences.
*740 Scrivner and Mowdy filed a motion for post-conviction relief in April 1991. They contended their defense counsel had rendered ineffective assistance by failing to advise them that they had been incorrectly charged with six counts of "aggravated assault" as accomplices when they should have been charged as "accessor[ies] after the fact." As a second basis for their contention that their guilty pleas were involuntary, Scrivner and Mowdy claimed that their lawyer had made promises to them regarding their incarceration which never came to fruition. They said that, despite the expressed sentencing recommendation from the State, their lawyer had assured them that "they would not serve more than 3 years, and they would remain either at the county jail or a nearby Community Work Center, if they would also agree to testify for the State in the Rosemarie [sic] Hogan trial." Scrivner and Mowdy also made several other allegations of false promises by the lawyer. The petitioners attached a sworn letter from Martin Scrivner's mother dated February 15, 1991. The letter described the discussions Mrs. Scrivner had with Travis Vance, the attorney who represented defendants Martin Scrivner and Johnny Mowdy. The letter stated Travis Vance told Mrs. Scrivner during their first meeting that "he was almost sure that Martin would get some `time', but that he, Travis Vance, could get the charge down to one count of accessory to aggravated assault. That would get the time down to five or ten years." The substance of the affidavit was that the attorneys would attempt to have Mowdy and Scrivner serve their time locally and that they were confident they would succeed, but there was no guarantee.
The State filed its motion for summary judgment, and in support of the motion, the State said:
The State would show that Petitioners were advised of all their constitutional rights and all possible defenses to the charges. At no time were any promises or guarantees made to Petitioners regarding the outcome of the case if it went to trial or the time that Petitioners could actually be expected to serve if they plead guilty... .
Furthermore, Petitioners stood before the Circuit Court of Warren County on August 9, 1990, and responded to the Court's questions concerning their constitutional rights in regard to entry of a guilty plea. The Court found no reason to stop the proceedings and no objection was voiced by either petitioner.
Affidavits from Travis Vance and Richard Johnson, the two attorneys who represented Mowdy and Scrivner, were secured by the State. Vance stated in part in his affidavit:
Sometime around May 29, 1989, I first discussed with Johnny Mowdy and Martin Scrivner, in the Warren County jail, the circumstances surrounding the six charges of aggravated assault that were lodged against these two and a third accused, Rosemary Hogan (sic)... .
Subsequent to the first meeting with Mowdy and Scrivner, I had several more conversations with them and their family members relative to the charges. I advised them of the possibility of a conflict of interest in the event that the statement of either of them should conflict against the other. We also discussed the possibility of a lesser charge being in order and generally discussed the penalties applicable. I went to the Warren County jail with Mrs. Scrivner, Johnny's mother, and we talked openly about the charges and the possible consequences. We discussed all defenses available to the charges and possible witnesses to what had transpired. I never made any promise or guarantee as to what the ultimate outcome would be to the charges.
... My investigation of this case was thorough and included several [more] conversations and discussions with Mowdy and Scrivner, their family members, the District Attorney, law enforcement personnel and other witnesses. After fully informed plea bargaining discussions with the District Attorney, he was prepared to recommend 25 years on a plea of guilty. This offer was fully and completely explained to Mowdy and Scrivner. At no time did I indicate or promise that they would only serve three (3) years on such a sentence or *741 that they would remain at the Warren County jail indefinitely after sentence. In fact, they understood that I could make no such promise and that if they did plead guilty the Department of Corrections would make all decisions about service of their sentences. I made no threat to get them to enter their plea and I promised them nothing. Their plea was of their own free and informed volition.
Richard Johnson's affidavit was almost verbatim to Vance's. Johnson stated:
During the course of my association with Vance, I was present on several occasions with him at the Warren County jail while he discussed the facts of the incident and the circumstances with Mowdy and Scrivner.
Vance advised them that if either should have a statement that might conflict with the other, then he would have a conflict of interest and could not represent them both. I know of no such circumstance and Vance was employed to represent them in this matter. The facts of the incident were discussed at length on several occasions and Vance informed Mowdy and Scrivner of all their constitutional rights and all possible defenses to the charges and all possible lesser included charges ...
At no time do I recall hearing Vance make any promise or guarantee regarding the outcome of the case if it went to trial or the time that they could actually be expected to serve if they plead guilty. I remember that Mowdy and Scrivner would be called as a witness against Hogan and that Vance would see if they could remain in the Warren County jail as long as possible.
Summary judgment in favor of the State was rendered by the trial court. The court's opinion was that there was no "genuine issue of material fact" considering the entirety of the record. The court noted that both Mowdy and Scrivner previously stated to the court under oath that their guilty pleas were being rendered intelligently and voluntarily and that they were not induced by any threats or promises by their attorney or anyone else. Mowdy and Scrivner thereafter perfected an appeal to this court, raising the following issue for review:

DID THE CIRCUIT COURT ERR IN GRANTING SUMMARY JUDGMENT TO THE STATE ON MOWDY'S AND SCRIVNER'S MOTION FOR VACATION OF THEIR GUILTY PLEAS?

DISCUSSION OF LAW
Relying on Herring v. Estelle, 491 F.2d 125 (5th Cir.1974), Mowdy and Scrivner fault their attorney because they claim he erred in failing to advise them that they had committed only "accessory after the fact," rather than six separate aggravated assaults. Herring held that it is ineffective assistance of counsel to allow a person to plead guilty where the facts indicate that the offense was not committed. Six people were in fact shot with the .22 rifle. Mowdy and Scrivner state simply that they did not do it and only aided Rose in fleeing the scene of the crime after she shot the six people at Dodge City Lounge.
Mowdy and Scrivner assert that they blindly pleaded guilty to an offense they are technically not guilty of under Mississippi law. Mowdy and Scrivner fail to take stock of their situation. Their misconception is based upon the mistaken belief that they are not principals to this crime under their own statements to police. These statements were a part of the record and were available for the lower court's consideration. Mowdy conveniently forgets that in his statement he admitted that Rose told them both she intended to take her gun and shoot somebody when they all went back to Dodge City Lounge. Neither Mowdy nor Scrivner ever indicated they were not going to have anything to do with this, or attempted to talk Rose out of shooting someone. Having been fully advised of her intentions, they proceeded to drive to the Dodge City Lounge. It is evident from the record that Mowdy and Scrivner could not be classified as accessories-after-the-fact as they contend. They were principals under their own stated versions, if taken as true. In a jury trial, Mowdy's own statement would have been tantamount to a confession to being a principal to the aggravated assault. From Rose's position as set forth in her statement they were clearly principals, and, had a jury chosen to *742 believe Rose's version, there could be no question but that both Mowdy and Scrivner could have been convicted of the six counts of aggravated assault.
Mowdy and Scrivner did not have to fire the gun to be classified as principals to the offense of aggravated assault. This Court in Fleming v. State, 604 So.2d 280, 288 (Miss. 1992), held that any person who aids, counsels, or encourages another person in the commission of a crime is guilty as a principal, as well. Id. at 288. See also, Davis v. State, 586 So.2d 817, 821 (Miss. 1991); Sayles v. State, 552 So.2d 1383, 1389 (Miss. 1989).
This Court in Gaskin v. State, 618 So.2d 103, 107 (Miss. 1993), stated:
Knowledge of the elements is obviously a prerequisite to an intelligent assessment by the defendant of: 1) whether he has in fact done anything wrong under the law, and 2) the likelihood that he stands to be convicted if he exercises his right to a jury trial.
Certainly the Mowdy and Scrivner were entitled to advice enabling them to determine what they did wrong under the law. The affidavits of the two attorneys at the lower court level stated "that the defendants were advised of all of their constitutional rights and possible defenses to the charges... . We discussed all defenses available to the charges including the possibility of a lesser charge being in order and generally discussed the penalties applicable." The attorneys at trial level have denied all bases for relief alleged by Mowdy and Scrivner herein.
The facts in the record are not consistent with Mowdy's and Scrivner's allegations and summary judgment is proper. Mowdy and Scrivner argue that Sanders v. State, 440 So.2d 278 (Miss. 1983) applies; however, that case is distinguishable from the case sub judice. In Sanders there were no counter affidavits from the attorneys for that court to consider. The motion in this case was not dismissed on its face, but rather, it was dismissed on the State's motion for summary judgment after the State had filed an answer to the defendant's application for post conviction relief, secured affidavits from the attorneys countering each issue raised by the defendants and the court had considered the entire record. In Carter v. Collins, 918 F.2d 1198, 1202 (5th Cir.1990), that court held that the "state court may evaluate an ineffective assistance of counsel claim by making credibility determinations based on affidavits submitted by the petitioner and the attorney."
Mowdy and Scrivner in asserting ineffective assistance of counsel, must satisfy the two-part test announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which required a showing that (1) "counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense." Id. at 687, 104 S.Ct. at 2064. "This test applies to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). In Hill, this Court stated:
In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.
Id. at 59-60, 106 S.Ct. at 370. See also, Leatherwood v. State, 539 So.2d 1378, 1381 (Miss. 1989).
Mowdy and Scrivner's claim fails on its face due to their failure to delineate facts which, if proven, would show the likelihood of success at trial. They do not meet the criteria of the Strickland test.
*743 Mowdy and Scrivner further claim their lawyer erred because he made promises which were not kept to them regarding their incarceration and sentence which never came about. They state that they were to have received the benefit of certain promises if they agreed to testify for the State against Rose Hogan. Their lawyers refute these allegations by affidavits. Even if these allegations are taken as true, nothing in the record indicates whether Mowdy and Scrivner ever testified against Rose. Surely if they completed their part of this alleged deal and were double-crossed by the State, they would have said so in their pleadings, affidavits or briefs before this Court. We know that the alleged promise to remain in the county jail was not kept, because both Mowdy and Scrivner were promptly moved to Parchman where they still reside. The facts indicate the implausibility of the deal's occurring as Mowdy and Scrivner maintain.
Martin Scrivner's mother, Ruby Scrivner, supplied an affidavit which fails to support the appellants' allegations. Ms. Scrivner was not privy to any of the conversations regarding the guilty pleas.
Apparently, the trial judge placed great emphasis on the appellants having represented under oath before him during the entry of their guilty pleas and sentencing that they had not been induced to plead guilty by promises from anyone. This Court in Baker v. State, 358 So.2d 401, 403 (Miss. 1978) stated:
We are mindful, as stated in Blackledge v. Allison [431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977)], that "Solemn declarations in open court carry a strong presumption of verity." The state, the defendant, and the judicial system all have a significant interest in the plea. For the defendant, if guilty, he can begin serving his sentence without facing the delay and agony of a futile trial. Time is conserved for the state prosecutor and an already crowded court system is spared an unnecessary burden. Balanced against these administrative interests of course is the interest of protecting constitutional rights, particularly in the criminal law area.
The trial court is right to place great emphasis upon these statements under oath made by Mowdy and Scrivner in open court during the taking of their guilty pleas and sentencing. There should be a strong presumption of validity of anyone's statement under oath. However, we are now faced with one statement or the other not being the truth. The trial judge faced this same dilemma, obviously calling into question the appellants' credibility. This Court in Harris v. State, 578 So.2d 617, 620 (Miss. 1991), held "that not all instances of conflicting affidavits will merit an evidentiary hearing. Where the petitioner's version is belied by previous sworn testimony, for example, as to render his affidavit a sham we will allow summary judgment to stand." If ever there was a sham, it is clearly within these allegations through which Mowdy and Scrivner attempt to get this Court to order an evidentiary hearing to set aside validly imposed sentences based upon what they both now claim were involuntary pleas.
In considering their pleas of guilt, the trial court required the State to place in the record, in the presence of both Mowdy and Scrivner, the recommendation of sentences of 25 years in the custody of the State Department of Corrections for six aggravated assault convictions. Although they both claim their lawyer told them they would get 3 years, they clearly knew the State's recommendation would be 25 years. The judge further stated to both defendants that he could give them up to a maximum of 120 years and asked if they understood. Both stated they did understand that 120 years was the maximum sentence they could receive. There can be no doubt that Mowdy and Scrivner each knew that the judge intended his sentence to be 25 years.
The judge further advised both Mowdy and Scrivner of one aspect of criminal law that most defendants and some lawyers tend to forget  that he was not bound to accept the recommendation of the State in the plea bargain agreement. Judge Patrick then asked, "Knowing these things, are you still sure that you want to plead guilty?" Both Mowdy and Scrivner maintained they still wanted to plead guilty. Both Mowdy and *744 Scrivner repeatedly answered in response to questions by the trial judge, that they were pleading guilty freely, voluntarily, and without force, threat, or promise from any source, including their attorney. Both indicated they understood that they were pleading guilty to shooting six people. They told the court they were advised of all constitutional rights and were satisfied with their attorney's services. What is crystal clear from all this is that these two defendants expected to and did receive a 25 year sentence. They should not now be allowed a hearing in an attempt to avoid pleas of guilt for which they voluntarily bargained.
The affidavits of Mowdy and Scrivner were countered by the attorneys to the satisfaction of the trial judge. We should defer to the trial judge who was there, saw these two defendants, observed their demeanor, and heard what they said.
Regarding the question of where these sentences were to be served, Mowdy and Scrivner were clearly informed about the location by the trial judge when he stated
In the future, you'll be  when you get out  you'll be welcome to come to Warren County without any gunplay... . I would like to caution you, also, that once you get to Parchman that you are going to be tested... . If you get up there and don't follow the rules while you are there, you may end up spending this whole 25 years up there.
Can there be any doubt that these defendants knew that they were not going to be spending time in the Warren County Jail, but rather would serve their sentence at Parchman?

CONCLUSION
The Warren County Circuit Court correctly entered summary judgment. No genuine issue of material fact existed before the court based on the entirety of the record. The conflicting affidavits do not warrant an evidentiary hearing. Mowdy and Scrivner's prior pleas under oath before the same trial judge weighed heavily against their credibility when they once again, under oath, reappeared seeking to vacate their former sentences. We hold the issue raised to be totally without merit. Accordingly, the decision of the circuit court is affirmed.
DENIAL OF POST-CONVICTION RELIEF AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and JAMES L. ROBERTS, Jr., J., concur.
BANKS, J., dissents with separate written opinion joined by SULLIVAN, PITTMAN and McRAE, JJ.
BANKS, Justice, dissenting:
Once again we are confronted with a petition for post-conviction relief which has been resolved summarily based on conflicting affidavits. The sworn allegations are such that there appear to be genuine disputes as to material fact, requiring an evidentiary hearing. For that reason I dissent.

I
As a basis for their contention that their guilty pleas were involuntary, Scrivner and Mowdy claimed that their lawyer had made promises to them regarding their incarceration which never came to fruition. They said that, despite the expressed sentencing recommendation from the State, their lawyer had assured them, "they would not serve more than 3 years, and they would remain at the county jail or a nearby Community Work Center, if they would also agree to testify for the State in the Rosemarie (sic) Hogan trial." Scrivner and Mowdy also made several other allegations of false promises by the lawyer. The petitioners attached a sworn letter from Martin Scrivner's mother dated February 15, 1991. The letter recounted the dealings Mrs. Scrivner had with Travis Vance, the attorney who represented defendants Martin Scrivner and Johnny Mowdy. In part, the letter said Travis Vance told Mrs. Scrivner during their initial meeting that "he was almost sure that Martin would get some `time', but that he, Travis Vance, could get the charge down to one count of accessory to aggravated assault. That would get the time down to five or ten years." The only other substantive discussion occurred after the two had entered their plea. The tenor of the affidavit was that the *745 attorneys would seek to have the two serve their time locally and were confident of that result but that it was not a certainty.
The State moved for summary judgment. In support of the motion, the State said:
The State would show that Petitioners were advised of all their constitutional rights and all possible defenses to the charges. At no time were any promises or guarantees made to Petitioners regarding the outcome of the case if it went to trial or the time that Petitioners could actually be expected to serve if they plead guilty... .
Furthermore, Petitioners stood before the Circuit Court of Warren County on August 9, 1990, and responded to the Court's questions concerning their constitutional rights in regard to entry of a guilty plea. The Court found no reason to stop the proceedings and no objection was voiced by either petitioner.
Id. The State buttressed its position with affidavits from Travis Vance and Richard Johnson, who worked with Vance as an associate during the period Vance represented Mowdy and Scrivner. Id. Vance stated in part in his affidavit:
Sometime around May 29, 1989, I first discussed with Johnny Mowdy and Martin Scrivner, in the Warren County jail, the circumstances surrounding the six charges of aggravated assault that were lodged against these two and a third accused, Rosemary Hogan... .
Subsequent to the first meeting with Mowdy and Scrivner, I had several more conversations with them and their family members relative to the charges. I advised them of the possibility of a conflict of interest in the event that the statement of either of them should conflict against the other. We also discussed the possibility of a lesser charge being in order and generally discussed the penalties applicable. I went to the Warren County jail with Mrs. Scrivner, Johnny's mother, and we talked openly about the charges and the possible consequences. We discussed all defenses available to the charges and possible witnesses to what had transpired. I never made any promise or guarantee as to what the ultimate outcome would be to the charges.
... My investigation of this case was thorough and included several [more] conversations and discussions with Mowdy and Scrivner, their family members, the District Attorney, law enforcement personnel and other witnesses. After fully informed plea bargaining discussions with the District Attorney, he was prepared to recommend 25 years on a plea of guilty. This offer was fully and completely explained to Mowdy and Scrivner. At no time did I indicate or promise that they would only serve three (3) years on such a sentence or that they would remain at the Warren County jail indefinitely after sentence. In fact, they understood that I could make no such promise and that if they did plead guilty the Department of Corrections would make all decisions about service of their sentences. I made no threat to get them to enter their plea and I promised them nothing. Their plea was of their own free and informed volition.
Richard Johnson's affidavit corroborated Vance's representations. Johnson stated in part:
... During the course of my association with Vance, I was present on several occasions with him at the Warren County jail while he discussed the facts of the incident and the circumstances with Mowdy and Scrivner.
Vance advised them that if either should have a statement that might conflict with the other, then he would have a conflict of interest and could not represent them both. I know of no such circumstance and Vance was employed to represent them in this matter. The facts of the incident were discussed at length on several occasions and Vance informed Mowdy and Scrivner of all their constitutional rights and all possible defenses to the charges and all possible lesser included charges ...
At no time do I recall hearing Vance make any promise or guarantee regarding the outcome of the case if it went to trial or the time that they could actually be expected to serve if they plead guilty. I remember that Mowdy and Scrivner would be *746 called as a witness against Hogan and that Vance would see if they could remain in the Warren County jail as long as possible.
The Warren County Circuit Court entered summary judgment in favor of the State. The court expressed the opinion that it saw no "genuine issue of material fact" after considering Mowdy's and Scrivner's motion to vacate their pleas and the State's response. The court gave special note to the fact that both Mowdy and Scrivner had said to that very same court under oath that their guilty pleas were being rendered intelligently and voluntarily and that they were not induced by any threats or promises by their attorney or anyone else. Mowdy and Scrivner thereafter perfected an appeal to this court.

II
Miss. Code Ann. § 99-39-19(2) (Supp. 1992), vests the circuit courts of this State with the authority to grant motions for summary judgment in post conviction relief proceedings "when it appears from the record that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." This standard is the same as that in Rule 56, Mississippi Rules of Civil Procedure.
[T]he motion for a summary judgment challenges the very existence or legal sufficiency of the claim or defense to which it is addressed; in effect, the moving party takes the position that he is entitled to prevail as a matter of law because his opponent has no valid claim for relief or defense to the action, as the case may be.
... [S]ummary judgment is not a substitute for trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. Given this function, the court examines the affidavits or other evidence introduced on a Rule 56 motion simply to determine whether a triable issue exists, rather than for the purpose of resolving that issue.
Miss. Rule Civ.Proc. 56, Comment. Here, in essence, Mowdy and Scrivner are claiming that genuine issues of material fact continued to exist after the State filed its pleadings. If they are correct in their assertions, it is axiomatic that the circuit court's issuance of summary judgment must be reversed and this case remanded for an evidentiary hearing to determine the legitimacy of Petitioners' claims that their guilty pleas were involuntarily entered.

III
Mowdy and Scrivner assert that their guilty pleas were involuntarily entered, because they were based in part upon promises from their lawyer that were never fulfilled. As noted above, they claim their lawyer promised them that if they pleaded guilty they would not have to serve any more than three years in jail, even though they knew the State would recommend twenty-five years as the sentence for both of them. They also claim their lawyer told them they would serve their entire jail time either at a county jail or a nearby work center. Allegedly, these leniencies were to be provided to them in exchange for testimony against their co-defendant Rose Marie Hogan.[1] Regardless of the verity of these allegations, we know that such leniencies did not in fact take place. Mowdy and Scrivner are both at Parchman serving general twenty-five year terms. Pursuant to law, they are eligible for parole in six years and three months[2] and *747 eligible for good time release in approximately twelve years and six months.[3]
When Mowdy and Scrivner appeared to enter their guilty pleas, they were interrogated by the circuit court regarding the circumstance of their pleas. They were asked specifically, "Has anybody promised you anything in order to get you to plead guilty?", "Has your attorney made any threats or promises to you in this case?", and "Has anyone told you the Court would be lighter on you if you pleaded guilty?" Both Mowdy and Scrivner responded, "No, sir", to each question. They claim they responded that way, because they were advised by their counsel not to mention any of the aforementioned arrangements to the court. They allege their lawyer told them that despite their representations to the Court, "everything would be worked out", because the agreement was between them and the prosecution.
When the circuit court granted summary judgment to the State on this matter, it placed emphasis on the fact that appellants had represented under oath to the sentencing court that they had not been induced to plead guilty by promises from anyone. This Court has held on several occasions that unfulfilled promises or assurances by defense counsels may render involuntary guilty pleas based on such assurances. See Myers v. State, 583 So.2d 174, 177 (Miss. 1991); Schmitt v. State, 560 So.2d 148, 152 (Miss. 1990); Sanders v. State, 440 So.2d 278, 283-84 (Miss. 1983). Sanders is the seminal case. In that case, the petitioner urged that he had pleaded guilty to two counts of aggravated assault based upon assurances from his counsel that he would receive consecutive, five-year sentences. 440 So.2d at 284. Williams was actually sentenced to two consecutive, seventeen year terms. Id. at 281. The Sanders Court observed:
[C]ounsel's representation to the defendant that he will receive a specified minimal sentence may render a guilty plea involuntary. Mosher v. Lavallee, 491 F.2d 1346 (2d Cir.) cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974). Where defense counsel lies to the defendant regarding the sentence he will receive, the plea may be subject to collateral attack. Where defense counsel advises the defendant to lie and the tell the court that the guilty plea has not been induced by promises of leniency (when in fact it has), the plea may be attacked. The law is clear that where the defendant receives any such advice of counsel, and relies on it, the plea has not been knowingly and intelligently made and is thus subject to attack. Burgin v. State, 522 S.W.2d 159 (Mo. App. 1975).
440 So.2d at 283-84. Additionally, in Baker v. State, 358 So.2d 401, 403 (Miss. 1978), the Court expressed the position that a recitation of voluntariness by a defendant during a plea colloquy will not render that plea unchallengeable by subsequent, collateral attack. Specifically, the Court said:
We agree with the spirit of Blackledge[4], e.g., that there should not be a per se rule prohibiting collateral attack on a plea in all circumstances, simply because the transcript on its face reflects recitation of voluntariness and awareness of the consequence.
358 So.2d at 403.
The majority attempts to distinguish Sanders by noting that here the trial court looked to the entire proceeding and treated the matter as a summary judgment. Majority opinion ante at p. 742. The fact is that that is precisely what was done in Sanders where the trial court specifically referred to the transcript of the plea proceedings. 440 So.2d at 283. Except for the lawyer affidavits, the procedural posture is indistinguishable from Sanders. We dealt with competing affidavits in Harris v. State, 578 So.2d 617, 619 (Miss. 1991), and once again eschewed trial by affidavit.
We duty bound by the command that like cases be decide alike to apply the precepts established in Sanders to the question *748 whether Mowdy and Scrivner have indicated sufficient evidence to create a genuine issue of material fact. Their affidavits state a version of Vance's assurances. Mrs. Scrivner's affidavit, offered in support, provides little. She was not privy to the conversation leading to the agreement to plead guilty. Indeed she complains about her exclusion. As she relates the conversation that she had with the attorneys after the fact, she corroborates only that there was discussion of serving the time in the local community work center. Her affidavit, however, indicates that this was a goal likely to be obtained, not a promise.
The two attorneys swear by affidavit that they made no promise. The issue then is whether the sworn testimony of Mowdy and Scrivner is such that we can say that their affidavits are a sham. They denied that any promise was made. They also stood silent when the sentencing judge, prior to imposing sentence, referred to "once you get to Parchman", belying their contention that they expected to serve at the county jail or community work center.
Still, they contend that their lawyer told them to lie, that the community work center agreement was between him (their lawyer) and the prosecutor. Nowhere in the guilty plea colloquy were they advised that the question of where they served was for the department of corrections, not the prosecutor, and that no one could make them any assurances concerning parole or other matters. Under the circumstances I am more comfortable with findings of fact made on the basis of a full evidentiary hearing as opposed to the majority sanctioned trial by affidavit.[5]

CONCLUSION
For the foregoing reasons, I would reverse the judgment of the circuit court and remand this matter to the circuit court for an evidentiary hearing.
SULLIVAN, PITTMAN and McRAE, JJ., join this dissent.
NOTES
[1] There is no indication in the record regarding whether Mowdy and Scrivner ever testified against Rose Marie Hogan. The assumption made by the majority that the two did not keep their end of the alleged bargain, however, is unwarranted. Majority opinion ante at p. 743. It is possible that they did in fact testify against Rose. It is also possible that Rose entered a plea or that her case was otherwise disposed of so that the testimony was not needed even though these defendants stood ready. The point is, it is useless to speculate or to reach unwarranted assumptions when the facts can be established at a hearing.
[2] Six years and three months is one fourth of twenty-five years, and § 47-7-3(1) of the Code makes prisoners generally eligible for parole after serving one-fourth of their sentences. See Miss. Code Ann. 47-7-3(1) (Supp. 1992).
[3] Twelve years and six months is one half of twenty-five years, and § 47-5-138(1) of the Mississippi Code provides, "An inmate shall be eligible to receive an earned time allowance of one-half (1/2) of the period of confinement imposed by the court except those inmates excluded by law." Miss. Code Ann. § 47-5-138(1) (Supp. 1992).
[4] Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1976).
[5] This does not mean that the defendants should be allowed to "slip out" of their pleas as the majority fears. It only means that they should be given an opportunity to support their claim concerning what they were told, to explain, if they can, their prior statements, and to confront their attorneys who indicate contrary testimony. If their evidence is credited the court may find reason to set aside their pleas. If it is not credited their pleas will remain intact. Should there be evidence of perjury they may be charged and tried for that offense as well. Myers v. State, 583 So.2d 174, 178 (Miss. 1991).